## JANE S. BROWN *vs.* CAROLINE D. FALES.

Suffolk. Jan. 15, 16. — Feb. 27, 1885. FIELD, DEVENS, & COLBURN, JJ., absent.

C. delivered a certificate of twelve shares of stock in a corporation to B., a broker, for the purpose of speculation on joint account. B. sold the stock and received the proceeds, but falsely represented to C. that he had the stock in his possession, and paid C. the dividends on it for several years. B. died, and A., his wife, was appointed administratrix of his estate. After her appointment, C. applied to her for his stock, and A., with funds belonging to B.'s estate, bought twelve shares of said stock, had it transferred to C., took the certificate in C.'s name, and delivered it to him, C. thereupon signing and giving to A. the following instrument: "Received of A., adm'x of the estate of B., twelve shares of . . . . stock; I agree to hold her harmless in any manner from loss arising out of her above action." A. charged the cost of this stock in her first account as administratrix, but the Probate Court disallowed it, and no appeal was taken from such decree. Subsequently the estate of B. was adjudged insolvent. Commissioners were appointed, whose report of the allowance of creditor's claims was confirmed. The second account of the administratrix, showing a balance in her hands, was allowed; and an order of distribution to the creditors was made. No claim was proved against the estate for or on account of said stock. C. executed the above instrument upon the information and in the belief that the shares named therein were the identical shares which he had previously owned, and which had been found by A. and returned to C. as his property; and A. understood her husband's estate to be insolvent before delivering said shares to C. *Held,* that A. could not maintain an action on the instrument against C.

No exception lies to the admission of evidence in behalf of the defendant which corrects that put in by the plaintiff.

A count for money paid can be sustained only by proof that the money was paid at the defendant's express or implied request.

No contract can be implied in addition to an express contract in writing relating to the same subject matter.

CONTRACT, in four counts. The second count alleged that, on January 17, 1881, the plaintiff was duly appointed administratrix of the estate of Walter R. Brown, and was duly qualified and entered upon the duties of said trust; that, within two months from the time of her said appointment and qualification, the defendant made a claim upon her for twelve shares of the capital stock of the Calumet and Hecla Mining Company, as due from said estate to the defendant; that the plaintiff, being ignorant of the legality of the defendant's claim, and not finding such stock among the effects of her intestate, upon the defendant's

offer to hold the plaintiff harmless from any loss in so doing, bought twelve shares of said stock, paying therefor the market price of $3000, and delivered said stock to the defendant, who, in consideration thereof, gave to the plaintiff the following instrument, dated February 19, 1881, and signed by the defendant: "Received from Mrs. J. S. Brown, adm'x of estate of the late Walter R. Brown, twelve shares of Calumet and Hecla Mining stock; I agree to hold her harmless in any manner from loss arising out of her above action;" that afterwards said estate was proved to be insolvent, and the defendant was duly notified of the fact of such insolvency, within the time allowed by law for proving claims against said estate; that the plaintiff had suffered a loss of $3000 arising out of her action in furnishing said stock to the defendant; and that the defendant had not held the plaintiff harmless, and owed her said sum of $3000, and interest thereon.

The third count alleged that the defendant owed the plaintiff $3000, for money paid by the plaintiff for and on account of the defendant at her request, namely, for the amount paid for the stock mentioned in the written instrument set forth in the second count.

The fourth count alleged that the defendant owed the plaintiff $3000, for twelve shares of Calumet and Hecla Mining stock delivered by the plaintiff to the defendant, being the same shares mentioned in the written instrument set forth in the second count.

Trial in the Superior Court, before *Barker*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff offered evidence tending to prove that Walter R. Brown, her husband, died on December 30, 1880; that the plaintiff was duly appointed administratrix of his estate on January 17, 1881; that upon her representation of the probable insolvency of said estate, on April 18, 1881, commissioners were duly appointed to receive and examine all claims of creditors against said estate; that the commissioners duly reported their allowance of creditors' claims, amounting to $13,930.82, and the same was duly confirmed; that the second account of the administratrix, allowed on March 2, 1882, showed the balance in her hands to be $6212.68; and that, on May 8, 1882, an order of

distribution to the creditors was duly made.    This evidence was not controverted.

This was the only order of distribution that had been made, and it ordered the distribution of only about one third of the $6212.68, balance in the hands of the administratrix.

It further appeared that, in 1875, the defendant deposited with Walter R. Brown her certificate of twelve shares of Calumet and Hecla Mining Company stock, indorsing the certificate in blank ; that on October 15, 1875, he sold said stock and received the proceeds thereof ; that after the plaintiff was appointed his administratrix, she purchased twelve shares of said stock, and took the certificate in the defendant's name, and delivered the same to the defendant, the latter thereupon signing and giving to the plaintiff the agreement of Februray 19, 1881 ; that the plaintiff purchased said stock with funds of said estate, and charged the same in her first account, filed on April 18, 1881 ; and that said charge was disallowed by the Probate Court on May 16, 1881, and no appeal was taken from such disallowance.

The defendant offered evidence tending to show that Walter R. Brown sold said stock without the defendant's knowledge or consent, and received the proceeds thereof ; that, after he received her stock and until his death, he paid her the quarterly dividends upon the stock, and always represented to her that he had the stock in his custody ; and, on her request that he would return the stock to her, he promised to do so, while always assuring her that he had her stock in his safe.    There was evidence of the plaintiff tending to show that the defendant delivered the stock to Walter R. Brown for purposes of sale and for speculation on joint account, but there was no evidence that he ever used it for such speculation.

The plaintiff's evidence tended to show that, after her husband's decease, the defendant applied to her to pay her for the twelve shares of Calumet and Hecla Mining Company stock which she deposited with her husband in his lifetime ; that, after persistent applications by the defendant, she, with funds belonging to her husband's estate, bought twelve shares of said stock and had it transferred to the defendant, and took the certificate therefor in the defendant's name on February 16, 1881, and delivered it to the defendant, the defendant thereupon

signing and giving to the plaintiff the agreement of February 19, 1881 ; and that she did not inform the defendant that she had bought the stock which she delivered to her.

The defendant's evidence tended to show that the plaintiff, after her husband's death, told the defendant that she knew her husband had stocks of hers in his lifetime, and asked her what they were ; that the defendant told her he had the twelve shares of Calumet and Hecla Mining Company stock, and he had told her, only a short time before he died, that he had them in his safe ; that from time to time she inquired of the plaintiff if she had found the defendant's stock, and suggested where to look for it ; that at one time, before February 15, 1881, the plaintiff told the defendant that she had found the stock, that it was the same stock, but not the same certificate ; that on February 15, being the day on which said dividends were payable, or the day after, the defendant applied to the plaintiff for her dividends on said twelve shares, and the plaintiff paid them.

The defendant testified that, about the middle of January, 1881, in a conversation between her and the plaintiff, the plaintiff said to her, " My husband's estate is in very bad condition and cannot pay its liabilities, but you shall have your stock anyway ; I am jealous of my husband's honor ; " and to the defendant's remark, " It is my stock I want, not your money," the plaintiff replied, " It will take all the brokers will allow me." Other witnesses called by the defendant testified that the plaintiff made similar statements to them about the middle of said January.

It appeared in evidence that the plaintiff was allowed by the broker's board $3000 in her own right, as insurance on her husband's life, and about $4600 for his seat at the board, which latter sum enured to his estate.

There was contradictory evidence as to whether the defendant delivered her stock to Walter R. Brown for safe keeping or for speculation, and as to whether the agreement of February 19, 1881, was given by the defendant upon the information given to her by the plaintiff, and in the belief induced by the plaintiff, that the twelve shares therein mentioned were the identical shares which she owned in 1875, which had been found by the plaintiff and returned to the defendant as her own property,

(the defendant having testified that the plaintiff so said to her, and that she so understood and believed at the time of giving said agreement of February 19, 1881, and the plaintiff having denied the same,) and as to when, with reference to the delivery of the stock by the plaintiff to the defendant, the plaintiff first understood that the estate of her husband was insolvent.

The records of the Probate Court, put in evidence by the plaintiff, showed the claims allowed by the commissioners to amount to $13,930.82.

The defendant was allowed to put in evidence, against the plaintiff's objection, the records of the Probate Court, showing the allowance of a claim of the defendant for about $1400 against said estate, in addition to the amount allowed by the commissioners; and the record of the Superior Court, showing that said claim of $1400 had been allowed by a judgment of that court.

No claim was proved by the plaintiff or any other person against the estate of the plaintiff's intestate for the twelve shares of Calumet and Hecla Mining Company stock deposited with him.

The plaintiff asked the judge to instruct the jury, that, if they found that Walter R. Brown had sold the defendant's Calumet and Hecla Mining Company stock, and that the plaintiff bought and paid for, out of the fund which she held as administratrix, twelve shares of said stock, and delivered them to the defendant upon the agreement of February 19, 1881, and that the plaintiff's charge for such payment in her account to the Probate Court was disallowed by said court, and no appeal was taken from said disallowance, the plaintiff was entitled to recover in this action.

The judge declined so to rule, and instructed the jury that, if they were satisfied by the defendant that she was induced to sign the agreement of February 19, 1881, given upon the delivery of the stock, by false and fraudulent representations made to her by the plaintiff, and believed by the defendant, that the stock mentioned in said agreement was the defendant's identical stock which she had delivered to the plaintiff's intestate in his lifetime, the defendant was not liable under said agreement;

that, on the other hand, if the plaintiff delivered the stock to the defendant, and the defendant received it in satisfaction of her claim as a creditor of the estate of the plaintiff's intestate, for the value of her twelve shares of stock deposited with him in his lifetime, and took from the defendant the agreement of February 19, 1881, upon such delivery of the stock, the estate having proved insolvent, the plaintiff would be entitled to recover, on the agreement, the difference between the value of the stock delivered to the defendant, which it was not disputed was $3000, and the dividend the plaintiff would be entitled to receive from the estate, upon the proof of the defendant's claim, which the plaintiff had satisfied.

The judge submitted the following questions to the jury, without objection by either party: "1. On what terms was the certificate of the twelve shares of Calumet and Hecla stock delivered to and received by Walter R. Brown, in 1875? that is, was it for safe keeping, or for the purpose of speculation upon joint account? 2. Was the agreement of February 19, 1881, given by the defendant upon the information and in the belief that the twelve shares therein mentioned were the identical shares which she owned in 1875, and which had been found by the plaintiff and returned to the defendant as her own property? 3. When, with reference to the delivery of the stock by the plaintiff to the defendant, did the plaintiff first understand that the estate of her deceased husband was insolvent?"

The jury returned a verdict for the defendant; and returned the following answers to the questions submitted to them: "1. For speculation. 2. It was. 3. Before delivery."

The plaintiff alleged exceptions to the admission of the evidence objected to, to the refusal of the judge to rule as requested, and to the instructions given.

*W. S. Stearns*, for the plaintiff.

*D. E. Ware*, for the defendant.

C. ALLEN, J. Where the language of a contract is equivocal in itself, or is made so by proof of extrinsic circumstances, so that it is susceptible of more than one construction, oral evidence is competent to show the situation of the parties, and to enable the court to be surrounded by the same circumstances as the parties were, and to look at the contract in the same light as they did,

and thus to aid the court in applying and construing the language of the contract; subject of course to this limitation, that the meaning thus arrived at must be consistent with a meaning which the words themselves bear. *Smith* v. *Faulkner*, 12 Gray, 251, 255. *Eaton* v. *Smith*, 20 Pick. 150. *Russell* v. *Lathrop*, 117 Mass. 424, 426. *Shore* v. *Wilson*, 9 Cl. & Fin. 355, 540, 542, 543, 565. 1 Chit. Con. (11th Am. ed.) 156. In the present case, the court, without objection, admitted such evidence, which, if believed, was sufficient to warrant the jury in finding as they did in answer to the second question submitted to them. It is therefore now to be assumed as a fact, that the defendant executed the agreement in suit under the belief that she was simply receiving back her own identical shares, which she owned in 1875, and which had been found by the plaintiff, though at the time in question represented by a certificate of a later date than the original. It is moreover to be added, that this belief of the defendant was induced by information given to her by the plaintiff. The probability of this is not before us for consideration, nor should we be justified in failing to give effect to it, as a fact fully established by proof. The question then is, What, in the light of this fact, is the true meaning of the defendant's words, " I agree to hold her harmless in any manner from loss arising out of her above action " ? The view of the plaintiff is, that the words mean the action which she had actually performed, namely, using the funds of her husband's estate for the purchase of new shares, and delivering the same to the defendant. But we think the words mean the action which the defendant believed that the plaintiff had performed, and which, upon the jury's answer, it must now be assumed that the plaintiff knew that the defendant believed had been performed. This was the understanding which the defendant must have had of the contract which she made; it was also the understanding which the plaintiff knew that the defendant had of it. This understanding is also consistent with the words used. The result is, that the plaintiff was not entitled to recover, as the loss sustained by the plaintiff was not embraced within the defendant's contract. The authorties cited and relied on by the plaintiff, to the effect that the defendant could only avoid her contract by restoring or offering to restore the plaintiff to her former position, that is, by

surrendering the shares received by her, are applicable to a case where a party seeks to rescind a contract. In the present case, the defendant's contract is not rescinded; it is construed. Besides, we do not see that this question was raised at the trial.

We can see no error in the admission of the evidence showing the allowance of a claim by the defendant against the estate of the plaintiff's intestate. The fact was admissible to correct the evidence put in by the plaintiff; and, if any improper use was attempted to be made of the fact, the plaintiff should have asked suitable instructions, limiting its effect.

The plaintiff further says, that no legal consideration moved to her for her purchase of said stock for the defendant, and she "submits to the court whether or not, considering that both parties knew of the insolvency before and at the time of their said transactions, and that this action is brought by the plaintiff in her individual capacity, not as administratrix, the latter term being merely *descriptio personæ*, the plaintiff may be entitled to recover upon the third or fourth count in the declaration." No argument is presented in favor of the right thus suggested; and we do not think there was any such implied contract on the part of the defendant. In the first place, the purchase of the shares was not by the defendant's express or implied request, which must have been shown to sustain the third court. *Mansfield* v. *Edwards*, 136 Mass. 15, 19. And besides, no contract on the part of the defendant was implied, in addition to her express contract in writing, relating to the same subject matter. 1 Chit. Con. (11th Am. ed.) 89.          *Exceptions overruled.*