FREDERICK J. OSTERLING, DEFENDANT IN ERROR, v. CAPE MAY HOTEL COMPANY, PLAINTIFF IN ERROR.

Submitted November 23, 1911—Decided June 20, 1912.

1. A contract to pay a stipulated percentage of the cost of a building in lots of land to be selected by the party entitled to payment, at "schedule prices and on the terms adopted by" the other party, from lots shown on a map annexed to the contract, is a contract to pay not money, but a specific thing; and in case of performance and non-payment the measure of damages is the actual reasonable value of the lots.
2. Such a contract is not admissible in evidence under the common counts to fix the price stipulated.
3. The party enforcing such a contract and claiming his compensation cannot recover under the common counts for the reasonable value of the services rendered, but must sue on the special contract.

On error to Cape May Circuit Court.

The suit was upon a mechanics' lien for architect's services. The declaration contained only the common counts for work, labor and materials done and furnished, goods sold and delivered, money lent, account stated, and so on in the usual form, concluding with allegation of a promise to pay and claiming damages for failure to make such payment. Then follows the statutory averment that the debt is a lien, &c., describing the land, bringing in a mortgage claim as subordinate to the lien. There is a bill of particulars "for services as architect" in preparing plans and supervising the erection of the building and other services connected there-

with "pursuant to a certain written contract" between plaintiff and defendant dated August 29th, 1905; and that the "agreed price" was five per cent. on total cost of the work complete, which was $828,000. There was no copy of the contract annexed to the declaration or forming part of the bill. of particulars; but it was set up by defendant in, and annexed to, a special plea. There are two additional items, one for salary of a superintendent at the building and another for a water color picture of the building, but these were abandoned on the trial. There was a verdict and judgment for plaintiff for the full amount of the claim, or nearly so, which was somewhat reduced on motion for new trial, the rule being discharged upon plaintiff waiving the excess found by the trial court.

The case is now presented upon assignments of alleged errors at the trial and also of alleged errors in the order "reducing" the verdict and in refusing to quash a levy on personal property; the ground taken in the latter particular being that the judgment as actually entered was special against the land liened and that it would not support an execution against personalty.

For the plaintiff in error, *Robert H. McCarter* (*Arthur F. Egner* and *J. Spicer Leaming,* on brief).

For the defendant in error, *Gaskill & Gaskill.*

The opinion of the court was delivered by

. PARKER, J. Throughout the trial the insistment on the part of the plaintiff was that he was entitled to recover upon an implied *assumpsit* for the reasonable value of his services as claimed to have been rendered, and extending up to the completion of the hotel building upon which he was employed. There was a written contract, prescribing his duties and the character and amount of compensation to be made for their performance; but plaintiff avoided the use of this contract as a basis of recovery, relying on the rendition and acceptance of the services as raising an implied promise to

pay for them, and putting in expert proof as to the reasonable value of those services in terms of percentage of cost of the work, and also introducing the contract in evidence, over objection and exception, "as authority for doing the work, and as a basis of calculation." Throughout the trial defendant, on the other hand, maintained that implied *assumpsit* on a *quantum meruit* would not lie, and that the suit should have been brought as for performance of the written contract and for the compensation therein stipulated or damages for failure to make it.

The importance of the issue thus made becomes manifest on an examination of the provisions of the contract relating to compensation. The second paragraph fixes it at five per cent. on total cost; the third provides that plaintiff may be discharged and in such case shall be paid as though the work had then been abandoned. The fourth is here copied in full:

"*Fourth.* It is mutually agreed that the compensation to be paid to the party of the second part, in amount above specified, shall be paid in lots of the Cape May Real Estate Company, which lots are to be taken at schedule prices and upon the terms already adopted by the Cape May Real Estate Company; and such lots shall at once be selected by the party of the second part from Plan A of the Cape May Real Estate Company and from lots that are not at this time sold or on option, and annexed hereto is a marked map of Plan A of the Cape May Real Estate Company from which said selections shall be made by the party of the second part, and no lots shall be selected which are marked on said map. In the event of the employment of the party of the second part being terminated before the completion of said building then the selections shall abate to the amount that is found to be due to the party of the second part at the time of the termination of his services. In case of delay in the selection of said lots all lots sold by the Cape May Real Estate Company in the meantime shall be marked off of said map before the selections are made."

It is plain from a reading of these provisions that the agreement for payment was not to pay in money but to pay

in a certain quantity of lots to be selected by plaintiff, the quantity or number to be determined not by the actual value of the lots as footing up the amount in dollars figured at five per cent. on total cost, but by the list price of such lots. Of that list price we know little or nothing from the evidence. It may be more or less than the real value of the lots or some of them. The question of actual value was not dealt with by the court, nor the question of payment in lots, but the jury were permitted to assess plaintiff's damages as upon an implied *assumpsit* to pay the reasonable value of his services in cash.

We consider that this entire theory of recovery was erroneous. The contract was entire on the plaintiff's part; it was express, as to its terms, and in writing so that the terms were settled beyond dispute. The express promise was not the same as the law would imply; so that the declaration should have been on the special contract. *Princeton, &c., Turnpike Co. v. Gulick,* 1 *Harr.* 161. An implied contract cannot exist when there is an express contract embracing the identical subject. *Voorhees v. Woodhull,* 4 *Vroom* 494. Recovery might be had on a *quantum valebat* if the contract was unfulfilled and was rescinded by the parties (*Brewing Co. v. Donnelly,* 30 *Id.* 48), but such was not the case here, and indeed the contract expressly provided for the same character of compensation in case of discharge. Assuming the performance by plaintiff of the written contract and a failure by defendant to make compensation as specified therein, there arose a right of action for damages, and the measure of damages was not five per cent. of cost in cash, but the fair value of the lots that plaintiff was entitled to at list prices. *Hinchman v. Rutan,* 2 *Id.* 496, 497. The special agreement was not admissible in evidence under the common counts to fix the price stipulated, as it did not call for payment in money. *Weart v. Hoagland,* 2 *Zab.* 517. There was an objection to the introduction of the contract in evidence because the action was on the common counts, which was overruled and exception taken; and there was a motion

to nonsuit on the ground, among others, that the special contract precluded recovery on the implied *assumpsit* under the conditions of the case. This was also overruled and exception taken, and these exceptions are assigned for error. The objection should have been sustained and the motion to nonsuit granted. These errors go to the root of the case and require a reversal of the judgment that a *venire de novo* may issue.

We have considered the other assignments of error but the result reached above renders it unnecessary to discuss them. The reversal of the judgment carries with it the execution and levy and the rule discharging the rule to show cause, so that no special discussion of these proceedings is required.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, JJ.   12.