ROBERT H. GARDINER & another, trustees, *vs.* JAMES H. HIGGINS.

SAME *vs.* BOSTON HERALD, INCORPORATED.

SAME *vs.* EVENING TRAVELER COMPANY.

Suffolk.   December 8, 1919. — January 6, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Landlord and Tenant*, Surrender.   *Contract*, In writing, Construction. *Practice, Civil*, Requests and rulings.

An agreement in writing between the assignee of a lease of a building and the owner for the cancellation and termination of the lease provided that the lease be "cancelled and discharged and made null and void for the remainder of said term, and the parties hereto severally and mutually release and quitclaim to the other all rights, claims or damages which they or he may have under the terms of said lease;" that the "said premises are hereby surrendered and re-turned" by the assignee to the owner, and that the assignee "hereby assigns, transfers and sets over unto" the owner "all his right, title and interest in and to any rents or claims for rent against subtenants in said premises accruing from and after" the date of the agreement. *Held*, that the agreement was much more than a bare surrender of the lease.

The agreement above described, fairly construed, does not imply nor permit the implication of the existence of obligations in addition to its express requirement.

The owner of the premises, after the execution and delivery of the agreement above described, dispossessed a sublessee. The sublessee successfully prosecuted an action for damages against the owner. In actions by the owner upon the agreement against the lessees and their assignee, it was *held,* that it was proper to refuse to rule that the fair meaning of the agreement was that the premises should be surrendered free of subtenants other than tenants at will or at sufferance.

In the action above described, it also was *held,* that a request for a ruling that a surrender of leased premises for a consideration imports a covenant that the lessor shall regain possession free of any intervening rights on the part of subtenants, properly was refused as immaterial, the agreement under which the surrender was made importing more than a bare surrender.

THREE ACTIONS OF CONTRACT OR TORT by the trustees of the Bangs Real Estate Trust, owners of a building in Boston numbered 74 to 78 Summer Street, to recover expenses and damages which resulted to the plaintiffs as defendants in a suit in equity by a subtenant of those premises following his eviction, in which, it was alleged, the defendants all participated, after the defendant in the first action had surrendered to the plaintiffs a lease which had been given to the defendant in the third action and of which he was assignee. Writs dated April 6, 1915.

In the Superior Court the three actions were heard together by *O'Connell,* J., without a jury.

The essential provisions of the agreement for the surrender of the lease referred to in the opinion were as follows:

"Now therefore, in consideration of the payment by said Higgins to said Trustees of the sum of fifteen thousand three hundred ninety-three dollars ($15,393), the receipt whereof is hereby acknowledged, it is agreed;

"That said lease, dated May 11th, 1911, between said Trustees and said Evening Traveler Company, assigned to said Higgins, be and hereby is cancelled and discharged and made null and void for the remainder of said term, and the parties hereto severally and mutually release and quitclaim to the other all rights, claims or damages which they or he may have under the terms of said lease;

"That said premises are hereby surrendered and returned, to take effect as of February 1, 1913, by said Higgins to said Trustees, with all fixtures and personal property thereon;

"That said Higgins hereby assigns, transfers and sets over unto said Trustees all his right, title and interest in and to any

rents or claims for rent against sub-tenants in said premises accruing from and after said February 1, 1913.

"Said Trustees, however, in no way assume any obligation or duties toward said sub-tenants, if any there be.

"Said Trustees shall assume the wages of a janitor at sixteen dollars ($16) per week and an elevator boy at eight dollars ($8) per week from and after said February 1, 1913."

The material facts were undisputed and are described in the opinion.

The following requests, which were the same in all three cases, were asked for by the plaintiffs and were refused by the judge:

"21. That the fair meaning of the cancellation agreement of February 8, 1913, in view of all the circumstances under which it was made, was that the premises should be surrendered free of sub-tenants other than tenants at will or at sufferance.

"22. That a surrender of leased premises for consideration imports a covenant that the lessor shall regain complete possession free of any intervening rights on the part of sub-tenants."

The judge found for the defendant in each action and the plaintiffs alleged exceptions.

*H. Williams, Jr.,* (*C. E. Fay* with him,) for the plaintiffs.

*T. Brennan & E. H. Abbot, Jr.,* for the defendants.

JENNEY, J. The plaintiffs as trustees were the owners of a building on Summer Street in Boston, which for many years had been occupied by the publishers of a newspaper called the Evening Traveler. On May 11, 1911, they leased the building for three years to the Evening Traveler Company, the defendant in one of the three actions now under consideration. The lease contained no covenant against subletting. On July 1, 1912, the Boston Herald, Incorporated, the defendant in another of the actions, took over the publication of the Evening Traveler, and shortly thereafter moved from the leased premises substantially all the personal property of the Traveler company. The latter company desired to terminate its obligations under the lease. At this time, a partnership known as Albiani Brothers was in possession of a part of the leasehold under an agreement made by the Traveler company for the renewal of a sublease. The plaintiffs and the defendants had notice of this possession and of the

claim on which it was based, but disputed the rightfulness of the claim. Negotiations for the cancellation of the lease from the plaintiffs to the Traveler company were carried on over a considerable time between all of the parties hereto, the defendant Higgins acting only as the representative of the Traveler company. As a result of these negotiations, an assignment of the lease was made to Higgins, to which the plaintiffs assented, and Higgins and the plaintiffs made a written agreement for the termination of the lease for the consideration of $15,393, expressed therein as paid by Higgins, but actually paid by the Herald company from the moneys of the Traveler company. Thereupon the plaintiffs took possession of all the premises included in the lease, thus dispossessing Albiani Brothers. In the case of *Albiani* v. *Evening Traveler Co.* 220 Mass. 20, it was decided that the eviction of Albiani Brothers was wrongful; and a final decree has been entered, under which the plaintiffs have been compelled to pay Albiani Brothers $4,874.11. They have also properly expended $3,067.47 in the defence of that suit. The defendants had reasonable notice of the suit and were duly notified that the plaintiffs proposed to hold them liable for all damages and expenses incurred on account thereof. In that case it also was held that the surrender of the lease by Higgins was subject to the rights of Albiani Brothers.

The plaintiffs, having paid these amounts, brought these actions seeking separate judgments against Higgins and the Traveler and Herald companies for the amounts so paid, as damages suffered by them because of an alleged breach of the agreement of surrender. The sealed agreement, dated February 8, 1913, under which this contention is made, recites the assignment of the lease to Higgins, his desire "to be relieved for the remainder of the term thereof . . . from the payment of rent and the performance of other obligations" thereunder, and the payment of the consideration hereinbefore stated. It next provides that the lease is "cancelled and discharged and made null and void for the remainder" of its term, and that "the parties hereto severally and mutually release and quitclaim to the other all rights, claims or damages which they or he have under the terms of said lease." Higgins also assigned to the plaintiff "all his right, title and interest in and to any rents or claims for rent against sub-tenants" accruing from

and after February 1, 1913, as of which day it was expressly provided that the surrender should take effect. It was further provided that the plaintiffs did not "assume any obligation or duties toward said subtenants, if any there be." The plaintiffs also assumed the wages of a janitor and elevator boy from and after February 1, 1913.

Unquestionably the plaintiffs, at the time this agreement was made, knew that Albiani Brothers were in possession and that they claimed the rights of a subtenant, and although the plaintiffs took an assignment of rents accruing from such tenants, they did not assume any obligations as to them.

The actions were tried together without a jury, and the plaintiffs requested rulings, which were alike in all cases and which were refused subject to exception. The judge found for the defendants.

The plaintiffs' action against Higgins is based entirely on the claim that his agreement should be construed as an undertaking on his part to deliver the premises free from the tenancy of Albiani Brothers, because, it is said, it amounted to a surrender, which is defined by Lord Coke (Co. Lit. 337b) as "a yeelding up an estate for life or yeares to him that hath an immediate estate in reversion or remainder, wherein the estate for life or yeares may drowne by mutuall agreement betweene them," and a surrender, while not destroying the derivative estate of a sublessee, necessarily implies the yielding of complete possession to the lessors. Shep. Touch. 300. See *D'Arcy* v. *Castlemaine,* [1909] 2 Ir. R. 474; *Beal* v. *Boston Car Spring Co.* 125 Mass. 157; *Shepard* v. *Spaulding,* 4 Met. 416.

It is not necessary to decide what would have been the effect of a bare surrender. The agreement is much more than that. The parties knew that Albiani Brothers claimed the rights of a sublessee. It must be assumed that they knew that if such rights were established, Albiani Brothers had a claim in damages against those standing in the right of the lessee, or had an enforceable interest in the premises occupied by them. To guard against any claim because of the former result, the agreement expressly provided that the plaintiffs did not assume any obligations of the lessee. If the alternative consequence ensued the occupation of Albiani Brothers would continue. The agreement fairly construed

does not imply nor permit the implication of the existence of obligations in addition to its express requirements. *Appleton* v. *Ames*, 150 Mass. 34, 43. *Brown* v. *Fales*, 139 Mass. 21. Higgins did not expressly agree to surrender to the plaintiffs any interest greater than that in fact vested in him as the assignee of the lease, and the agreement considered as a whole negatives the existence of the implied obligation now claimed.

Request 21 was therefore properly refused, and request 22 is immaterial, because if it be assumed, without deciding, that a surrender of a leasehold interest ordinarily implies the yielding of possession of the entire premises, the full and carefully drawn agreement did not import such obligation.

The actions against the Traveler and Herald companies are governed by the same reason. The requests did not require rulings as to any oral agreement between the plaintiffs and the Traveler company and are based on the written agreement and the surrender made thereunder. As Higgins is not liable, the other defendants cannot be held. It is unnecessary to state or consider other questions which might have been pertinent in case the agreement had been construed as contended by the plaintiffs.

*Exceptions overruled.*