Sanford Zarum *vs.* Brass Mill Materials Corp. & another.

Middlesex.  February 7, 1956. — May 3, 1956.

Present: Qua, C.J., Ronan, Spalding, Counihan, & Whittemore, JJ.

*Contract,* Respecting tax refund, Construction, Implied contract. *Unjust Enrichment. Practice, Civil,* Amendment; Exceptions: whether error harmful. *Error,* Whether error harmful. *Words,* "Improper."

Under a contract between a corporation and a seller of its stock to it providing that if the corporation should receive a tax refund "arising solely out of improper assessments" the seller should be entitled to a specified portion of the refund, a Federal tax assessment properly made under the law in effect at the time it was made did not become "improper" subsequently when a retroactive change in the tax law, together with an operating loss, resulted in a reassessment of the tax and a refund to the corporation; and the seller was not entitled to share in the refund under such provision of the contract. [84]

Specific coverage of the subject of tax refunds in a contract between a corporation and a seller of its stock to it for a price based in part on its estimated tax liabilities precluded the seller from recovering a portion of a tax refund from the corporation under an implied contract and on the principle of unjust enrichment. [84–85]

Denial of a motion to amend the declaration in an action by adding another count to it did not show error. [85]

Error, if any, in the admission in evidence at the trial of an action of contract of releases offered by the defendants did not harm the plaintiff where this court decided without resort to the releases that he was not entitled to prevail. [85–86]

CONTRACT. Writ in the Superior Court dated September 24, 1953.

The action was heard by *Cahill, J.*

*Meyer H. Goldman, (Thomas P. Agliata* with him,) for the plaintiff.

*Walter H. McLaughlin, (Arthur M. Gilman* with him,) for the defendants.

SPALDING, J. The plaintiff brings this action of contract to recover one half of a tax refund received by the defendant corporation from the United States. The case was referred to an auditor whose findings were not to be final. After the auditor filed his report and a supplemental report the case was heard by a judge without a jury. With the exception of two releases introduced by the defendants the case was submitted on the auditor's reports. The judge found for the defendants and the case comes here on the plaintiff's exceptions.

The pertinent facts are these. The plaintiff formerly owned one hundred shares of the capital stock of the corporate defendant, Brass Mill Materials Corp., hereinafter called the corporation. These shares represented one half of the capital stock issued by the corporation. The defendant Sack is the owner of the other half of the corporation's issued capital stock. Differences arose between the plaintiff and Sack and as a result an agreement was entered into on September 18, 1951, between the plaintiff, Sack, and the corporation, whereby the plaintiff agreed to sell his one hundred shares of capital stock to the corporation for $48,652.35.

In determining this sale price the parties had a balance sheet and profit and loss statement prepared as of May 31, 1951, the agreed "cut-off date." In establishing the net asset value of the stock as of May 31, 1951, the tax liabilities of the corporation to the United States were set up in the total sum of $95,252.69. This amount was the estimated tax liability for the calendar year 1950, and, according to the analysis of the corporation's accountants, represented an amount of $72,396.47 for income tax, and

$22,856.22 for excess profits tax. A subsequent tax audit by the Federal government changed these figures slightly. Under the audit the total tax liability for the year 1950 was established as $95,265.28, of which $73,895 was for income tax, and $21,370.28 for excess profits tax. Under the law then in effect this was a proper assessment.

On October 20, 1951, Congress amended the law with respect to excess profit taxes on corporations which commenced business after July 1, 1945. U. S. C. (1952 ed.) Title 26, § 430 (e) (1) (A) (65 U. S. Sts. at Large, 541). This statute was retroactive and, therefore, affected the amount of the excess profits tax due from the corporation for the year 1950. Although prosperous during the year 1950, the corporation suffered an operating loss of $122,695.17 for the year 1951. By reason of this loss in 1951 and the amendment of October 20, 1951, the corporation had a right under the tax laws to a "carry-back" adjustment and a refund on its excess profits tax for the calendar year 1950. In March, 1952, the corporation applied for a refund. Sometime in May or June, 1952, an allowance for over-assessment in the amount of $72,670.94 was made by the Federal government, and a refund check in the amount of $53,375.46 was sent to the corporation, the difference representing the last instalment of the 1950 tax ($19,050.53) which had not then been paid.

Paragraph 8 of the contract between the plaintiff, Sack, and the corporation provides: "The corporation agrees that if it should receive a refund of taxes from the Federal or State governments, arising solely out of improper assessments made with respect to the period ending May 31, 1951, then Zarum shall be entitled to receive one half (½) of the net proceeds of said refunds paid to the corporation, arrived at after deducting the expenses incurred in collecting said refund or refunds. It is expressly understood and agreed that this provision shall in no event entitle Zarum to receive any portion of a carry-back refund if such refund arises out of transactions occurring after May 31, 1951."

The question for decision is whether the plaintiff is en-

titled to recover any part of the refund of $72,670.94. Specifically the plaintiff contends that the trial judge erred in denying his requests for rulings numbered 3 to 11, inclusive, 19, 20, 26, and 27. These requests related to counts 1 and 2 of the declaration which are based on the contract. The substance of them is that the plaintiff was entitled as of right to a refund of the excess profits tax as a result of the amendment of the tax statute as against both the corporation and Sack, and that the refund must be deemed to have arisen "solely out of improper assessments" within the meaning of these words in paragraph 8 of the agreement. The requests were properly denied.

The auditor found — and this finding is not challenged — that the original assessment was proper when made. We do not agree with the plaintiff's contention that the subsequent amendment of the law touching excess profits had the effect of making the original assessment an "improper" one within the purview of paragraph 8. An assessment properly made does not become improper by reason of a subsequent retroactive amendment changing the rate of tax. See *Sunny Brook Distillery Co.* v. *United States,* 48 Fed. (2d) 976 (Ct. of Claims). This conclusion is not affected by the auditor's finding that from "an accounting point of view, an assessment which is proper as computed in accordance with the law then in effect, becomes an improper assessment if there is a subsequent change in the law applicable to the same." In the construction of written contracts words that are plain and free from ambiguity must be construed in their usual and ordinary sense. *Ober* v. *National Casualty Co.* 318 Mass. 27, 30. There is nothing about the contract here to suggest that the parties were using the word "improper" in other than its ordinary sense.

The plaintiff further contends that the trial judge erred in denying his requests for rulings 12, 13, 15 to 18, inclusive, 21, 22, 28, and 29. The theory of these requests is that the tax refund received by the corporation was in the nature of money had and received to the plaintiff's use, and was recoverable by the plaintiff from the corporation under

counts 3 and 4 of his declaration. In effect the plaintiff seeks to recover a portion of the refund under an implied contract and on principles of unjust enrichment. These requests were rightly denied. The contract entered into by the parties is comprehensive and appears to have been carefully drawn; it specifically covered the subject matter of tax refunds and the parties have set out the only conditions under which the plaintiff would be entitled to recover if the corporation received a refund. In these circumstances there is no room for an implied contract; nor is there any basis for recovery on principles of unjust enrichment. The law will not imply a contract where there is an existing express contract covering the same subject matter. *Phelps* v. *Sheldon*, 13 Pick. 50, 52. *Massachusetts General Hospital* v. *Fairbanks*, 129 Mass. 78, 81. *Brown* v. *Fales*, 139 Mass. 21, 28. *Gardiner* v. *Higgins*, 234 Mass. 350, 354–355. *Kennedy* v. *B. A. Gardetto, Inc.* 306 Mass. 212, 216. *Klebe* v. *United States*, 263 U. S. 188, 191.

The plaintiff shows no basis for recovery against Sack that is superior to his right against the corporation. Indeed, the only undertaking under paragraph 8 of the contract to repay to the plaintiff any portion of a tax refund was made solely by the corporation. There was no such undertaking on the part of Sack.

The remaining exceptions argued by the plaintiff require but a word or two. One was an exception to the judge's refusal to allow the plaintiff to amend his declaration by adding another count. There was no error. *Peterson* v. *Cadogan*, 313 Mass. 133. Requests numbered 14, 23, 24, 25, and 30, which related to this count, need not be discussed. The other exception arises from the admission in evidence of two releases offered by the defendants.[1] In the view we take of the case they have no bearing on the plaintiff's right to recover. Our conclusion that the plaintiff

[1] One of these releases was a general release dated September 18, 1951, running from the plaintiff to Sack; the other, bearing the same date, ran from the plaintiff to the corporation but expressly stated that the plaintiff did not release the corporation from any liability that might arise out of the agreement of September 18, 1951.

cannot prevail is made without resort to the releases. Hence even if, as we do not decide, it was error to admit them the plaintiff was not harmed.

This is the opinion of a majority of the court.

*Exceptions overruled.*