USCA1 Opinion

 

[NOT FOR PUBLICATION NOT TO BE CITED AS PRECEDENT]
 
United States Court of Appeals
 For the First Circuit
 ____________________
No. 98-1625
PAULA VERDERBER and JOSEPH VERDERBER,

Plaintiffs, Appellants,

v.

WINSTON C. PERRY, PARKER D. PERRY,
and ANDREA J. PERRY,

Defendants, Appellees.

____________________

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

____________________

Before

Boudin, Circuit Judge,
Gibson, Senior Circuit Judge,and Lynch, Circuit Judge.

____________________

 Barry S. Scheer, with whom Parker | Scheer, Attorneys were on brief, for appellants.
 Rosemary Traini, with whom Robert G. Cohen and Gittelsohn, Traini & Cohen were on brief, for appellees. 
 
____________________

March 8, 1999
____________________
 LYNCH, Circuit Judge. Winston, Parker, and Andrea Perry owned twenty-three acres of undeveloped land in Walpole, Massachusetts ("the land"). The Perrys contracted with Paula Verderber, a local real estate agent, and Joseph Verderber, a local contractor, to subdivide and develop the land. When the Perrys canceled the deal, the Verderbers filed suit. The district court found the Perrys liable for breach of contract, but awarded damages well below the Verderbers' demand. The Verderbers appeal from this damage award.
I
 We discuss only those facts relevant to this appeal. The parties formalized their contract through a letter agreement, the validity of which is not challenged before this court. The contract was quite simple; its relevant aspects were even simpler. The Perrys would provide the land in exchange for the first $800,000 from its sale. Verderber Real Estate (essentially, Paula Verderber) would provide "marketing and sales effort" in return for a 5% brokerage commission on all sales. The Perrys would pay 60%, and the Verderbers 40%, of expenses incurred in the development process. These payments would be reimbursed "in full from the proceeds of the sale of the lots before the net amount is divided." (emphasis in original). The net amount -- the profits -- would be apportioned 60% to the Perrys and 40% to the Verderbers.
The project moved through its preliminary phases. Despite the sixty-forty split intended by the contract, the Perrys paid the vast majority of the expenses incurred. Before ground was broken on the development's homes, however, Winston Perry lost confidence in the Verderbers, and the Perrys canceled the contract. The Verderbers filed this action in Superior Court, and the Perrys removed to federal court under diversity jurisdiction. The district court heard the case on an expedited, jury-waived basis. After a three-day trial, the court found the Perrys in breach, and awarded damages to the Verderbers of $41,656.59. The Verderbers moved to amend the judgment, challenging the award as too low. The district court denied this motion, citing the contract doctrines of setoff and unjust enrichment. The Verderbers appealed. Before this court, the parties dispute neither the district court's factual findings nor most of its arithmetic; their arguments focus on a single aspect of the damages calculation.
II
 This court reviews "the district court's findings of fact for clear error and its conclusions of law de novo." Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 54 (1st Cir. 1998) (citing Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 769 (1st Cir. 1996)). In its initial ruling from the bench, the district court grounded its decision on the facts; in denying the motion to amend the judgment, however, the court relied on contract doctrines. We examine these rulings from both perspectives: first, as to whether the description of facts is clear error, and second, to see if the court correctly applied the law.The district court calculated damages based on the parties' expectations, or the "value of performance of [the] contract to the plaintiff[s]." To find this value, the court made several subsidiary findings of fact. The court found that "the fair per lot valuation" was $147,500, and that the land included fifteen lots. To develop and sell these lots, the court found, the parties would have to pay $740,649 in development costs. The court projected the contract's value by subtracting costs from revenue:
 $2,212,500 Sale value of 15 lots at $147,500 each
 -800,000 Payment for the land (paid to the Perrys)
 -110,575 5% commissions (paid to Paula Verderber)
 -740,649 Repayment of costs incurred
 -----------
 $561,276 Profit (revenues less costs)

The court then determined the Verderbers' share of the profits, and added the commissions Mrs. Verderber would have received:
 $561,276 Profit
 *40% Verderbers' percentage share
 -----------
 $224,510.40 Verderbers' share of profits
 110,575.00 Commissions paid to Paula Verderber
 -----------
 $335,085.40 Net due the Verderbers under the contract

The parties do not contest the calculations thus far.
On appeal, the Verderbers challenge only the district court's additional adjustment, explained in its ruling from the bench:
That gives us, when I sum those, a total of $335,085.40. But against that, against that, there must be deducted so much of the development costs to which [the Verderbers] should have but have not contributed, giving them credit against the development costs, the soft development costs of $115,000, giving the Verderbers credit for $2,028 and then taking the sum of the hard and the soft development costs as reduced, their contribution would have been $293,428.81, which leaves judgment for the plaintiffs in the amount of $41,656.59. Judgment will enter for the plaintiff in that sum.

This final calculation can be restated as a formula:
 $335,085.40 Net due the Verderbers under the contract
 -293,428.81 Verderbers' contribution to development costs -----------
 $41,656.59 Recovery for Verderbers

The Verderbers dispute this portion of the ruling, contending that the district court deducted their share of the development costs twice. When the court subtracted total costs of $740,649 from the profits, the Verderbers argue, it fully accounted for their failure to pay their share of these costs.
The Verderbers' argument is best understood by looking at the contract from their perspective. Expectation damages should place the Verderbers in the position they would occupy had the contract been executed in full. Adopting the district court's factual findings, the Verderbers claim their final position should be as follows:
 $0 Verderbers' baseline net worth
 -296,259.60 Verderbers' share of costs (40% of $740,649)
 296,259.60 Reimbursement of costs under 4 of contract
 110,575 Commissions paid to Paula Verderber
 224,510.40 Verderbers' share of profits (40% of $561,276)
 -----------
 $335,085.40 Net due the Verderbers under the contract

If the Verderbers had contributed nothing toward development costs, they argue, the end result would not change:
 $0 Verderbers' baseline net worth
 0 Verderbers' share of costs incurred
 0 Reimbursement of costs
 110,575 Brokerage commissions
 224,510.40 Verderbers' share of profits
 -----------
 $335,085.40 Net due the Verderbers

No matter how much they actually paid toward development costs, the Verderbers contend, they should receive $335,085.40, their share of the development profits. The district court's calculation affected the Verderbers as follows:
 $0 Verderbers' baseline net worth
 -293,428.81 Verderbers' share of costs incurred 0 Reimbursement of costs
 110,575 Brokerage commissions
 224,510.40 Verderbers' share of profits
 -----------
 $41,656.59 Net due the Verderbers

The district court erred, the Verderbers conclude, by charging them for development costs, but then failing to reimburse them.
The Verderbers are correct. This calculation does not accurately reflect the benefit of their bargain. After subtracting costs from revenues to calculate profits, the district court should not have subtracted costs again. The district court's subtraction of $293,428.81 cannot be grounded in the contract, which required reimbursement of costs, and represents clear error if so intended. Having found the contested calculation unsupported by the facts, we next consider whether contract law otherwise supports a reduction in the Verderbers' recovery.
As a preliminary matter, it is important to understand the district court's ruling on the relationship between the Verderbers' failure to pay 40% of the development costs and the Perrys' subsequent cancellation of the contract. "It is well established that a material breach by one party excuses the other party from further performance under the contract." Ward v. American Mut. Liab. Ins. Co., 15 Mass. App. Ct. 98, 100 (1983) (citing Quintin Vespa Co. v. Construction Serv. Co., 343 Mass. 547, 554 (1962)); see also Hastings Assocs., Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass. App. Ct. 162, 171, rev. denied, 424 Mass. 1108 (1997); Restatement (Second) Contracts 237 (1981). If the Verderbers' failure to pay constituted an uncured material breach of the contract, this breach would excuse the Perrys' subsequent repudiation. Otherwise, the Perrys would be liable for a breach of their own. The district court twice examined these events. Ruling from the bench, the court found as follows:
Let us first consider the performance of the Verderbers, because in order to recover under the contract, the Verderbers would have to perform what they were obliged to perform under the contract. This Court finds that they did not. It finds that it was evident to the Verderbers that whether it would be, Mrs. Paula Verderber especially is an experienced real estate entrepreneur. [sic] She well knew, she understood, she recognized that there would be significant both, what the parties here call both soft and hard development costs which would have to be incurred prior to the property ever being in a state that it could be sold on a parcel-by-parcel basis but for the contribution of 40 percent of the carrying costs on a certain note taken out by Mr. Winston Perry which the Court finds that Mr. Winston Perry repaid once he attempted to withdraw from the contract and the payment of a bill in the amount of $2,068. [sic]
 The Verderber interests contributed nothing, either to the soft or hard development costs of the project. Nevertheless, the Court rules that this breach of the contract was excused by the conduct of Mr. Winston Perry in pressing forward with the relationship of the parties.
 I do not credit his testimony at trial that he repeatedly demanded payment from the Verderbers. I credit only the written record where from time to time he asked for payment of certain of the carrying costs and the Verderbers promptly complied.

In denying the Verderbers' motion to amend the judgment, the court stated the case slightly differently:
 It was the Verderbers who first breached this contract by failing to pay their portion of the development costs, and it was the defendant Winston Perry who overlooked this breach and assumed virtually the entire development costs himself. Ultimately, of course, it was Perry who abandoned the contract, obligating him to pay to the Verderbers the portion of the expected profits (i.e., the benefit of the bargain) which was their due.
 The Verderbers now conveniently overlook the fact that, had not Perry sunk his own money into the project to make up for their breach, there would be no present expectancy of profit to allocate.

Both times, the district court found that the Perrys, through Winston Perry, "excused" or "overlooked" the Verderbers' failure to pay, findings that the Perrys do not contest or even acknowledge. Such acceptance of a breach "operates as a promise to perform in spite of that non-occurrence," Restatement (Second) Contracts 246 (1981); see also id. 247; Farnsworth, Contracts 8.19, at 648; cf. Peabody N.E., Inc. v. Town of Marshfield, 426 Mass. 436, 441 (1998) (noting that failure to meet the terms of a contract can be excused); Realty Developing Co. v. Wakefield Ready-Mixed Concrete Co., 327 Mass. 535, 537 (1951) ("A breach of contract is a failure to perform for which legal excuse is lacking."), and allows the Verderbers to recover damages from the Perrys.
The district court's legal reasoning, expressed in its denial of the Verderbers' motion to amend the judgment, cannot justify its reduction of the Verderbers' damages. The court first employed the doctrine of setoff, which it explained as follows:
The deduction is in the nature of a set-off, a claim Perry surely would have asserted against the Verderbers had the Court not immediately put the case to trial pursuant to Fed. R. Civ. P. 65(a)(2). The Court will not allow the prompt service it rendered to the parties, which all would agree drastically reduced their litigation costs, to be used to work an injustice upon Perry.

Massachusetts recognizes a "power in equity to 'compel a set-off of cross demands or of judgments . . . whenever necessary for the proper administration of justice.'" Massachusetts Motor Vehicle Reinsurance Facility v. Commissioner of Ins., 379 Mass. 527, 538 (1980) (alteration in original) (quoting Perry v. Pye, 215 Mass. 403, 413 (1913)). A setoff is employed "where the parties have reciprocal or mutual obligations to one another." Adams v. Zimmerman, 73 F.3d 1164, 1173 (1st Cir. 1996) (applying federal banking law). The law of setoff, however, does not support the calculation employed by the district court. The Verderbers' obligation to pay development costs is reciprocal only to the Perrys' obligation to reimburse those payments before distributing any profits. The district court already set off these obligations by subtracting costs of $740,649 from the contract's projected revenues.
As an alternative ground for its ruling, the district court briefly alluded to the doctrine of unjust enrichment:
The Verderbers would be unjustly enriched were they to recover of Perry a sum equivalent to the development cost which they ought to have paid -- but did not.

This doctrine is inapplicable here. Unjust enrichment is a doctrine of quasi-contract; it prevents unjust enrichment when no contract controls. Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment. SeeZarum v. Brass Mill Materials Corp., 334 Mass. 81, 85 (1956) (collecting cases); see also Garnick & Scudder, P.C. v. Dolinsky, 45 Mass. App. Ct. 925, 926 (1998) (reaching same result under related doctrine of quantum meruit). Even ignoring the foregoing point, we do not see how unjust enrichment can justify the contested deduction. This doctrine was developed to redress "unjust enrichment of one party and unjust detriment to the other party." Bushkin Assocs., Inc. v. Raytheon Co., 906 F.2d 11, 15 (1st Cir. 1990) (interpreting Massachusetts law) (citing U.S. Controls Corp. v. Windle, 509 F.2d 909, 912 (7th Cir. 1975)). We find neither of these elements here. The Verderbers, who seek only the benefit of their bargain, cannot be unjustly enriched thereby. Similarly, the Perrys suffered no detriment corresponding to the district court's damage reduction. Because the contract required repayment of all costs before distribution of any profits, its execution would have fully reimbursed the Perrys for development costs they actually paid, regardless of whether the Verderbers had agreed to pay some of those costs. 
While our discussion indicates that the reduced amount actually awarded rests on conceptual error, we appreciate that some reduction might be made from the Verderbers' otherwise reasonable expectation if the Perrys had themselves been damaged as a result of the failure of the Verderbers to pay their share of the development costs in a timely fashion. Cf. Lease-It, Inc. v. Massachusetts Port Auth., 33 Mass. App. Ct. 391, 397 (1992) ("[Plaintiff], despite its eventual material breach, may still recover damages from defendant for its [prior immaterial] breach; the measure of damages is limited, however, to the period between [defendant's] breach and [plaintiff's] material breach."). If any such damage claims were made and preserved, we do not preclude their consideration by the district court on remand.
III
 For the reasons stated above, the reduction of damages by $293,428.81 was in error. Accordingly, we vacate the judgment and remand this case to the district court for further proceedings consistent with this opinion.