# United States Court of Appeals
## For the First Circuit

No. 15-1059

KIM PHILIBOTTE,

Plaintiff, Appellant,

v.

NISOURCE CORPORATE SERVICES COMPANY, d/b/a Nisource Services
Inc., d/b/a Bay State Gas Company, d/b/a Northern Utilities,
Inc., d/b/a Columbia Gas of Massachusetts; AGL RESOURCES INC.,
d/b/a Nicor Energy Services Company, d/b/a Columbia Home
Solutions,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Lynch, Circuit Judges.

Valeriano Diviacchi, with whom Diviacchi Law Office was on
brief, for appellant.
J. Christopher Allen, Jr., with whom Troy K. Lieberman and
Nixon Peabody LLP were on brief, for appellee.

July 16, 2015

**LYNCH**, **Circuit Judge**.  This suit, about a water heater, concerns the appropriate standard for determining when consumer transactions styled as "leases" are in fact disguised "credit sales" or "retail installment sales."  If so, they are subject to disclosure requirements under federal and Massachusetts' consumer protection laws.  See Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; Massachusetts Consumer Credit Cost Disclosure Act ("CCCDA"), Mass. Gen. Laws ch. 140D, § 1 et seq.; Massachusetts Retail Installment Sales and Services Act ("RISSA"), Mass. Gen. Laws ch. 255D, § 1 et seq.

Plaintiff Kim Philibotte alleges that the defendants, Nisource Corporate Services Company and AGL Resources, Inc. (collectively "Nisource"), engaged in deceptive business practices by disguising credit sales of hot water heaters as leases to avoid making the required disclosures.  The district court found that Philibotte did not qualify for protection in light of the state-law standards governing these transactions, and dismissed her suit.  The district court reasoned that the decision of the Massachusetts Supreme Judicial Court ("SJC") in Silva v. Rent-a-Center, Inc., 912 N.E.2d 945 (Mass. 2009), which controls Philibotte's RISSA claim, also controls both her federal and state TILA claims in light of the similarity of the RISSA and the CCCDA (Massachusetts' TILA), which governs the applicable standard for both Philibotte's state and federal TILA claims under an exemption

- 3 -

granted to Massachusetts.  See Belini v. Wash. Mut. Bank, FA, 412 F.3d 17, 20 (1st Cir. 2005) (explaining that Massachusetts has been granted an exemption that displaces "federal [TILA] law in favor of state [TILA] law"); see also 15 U.S.C. § 1633; 12 C.F.R. § 226.29(b)(2).

We affirm on alternate grounds.  Philibotte's federal claim under TILA, 15 U.S.C. § 1640, is barred by the statute of limitations.[1]  As to the pendent state law claims, which are timely, we affirm dismissal for failure to state a claim.  We agree that Silva controls Philibotte's RISSA claim, but apply the plain statutory language to resolve her CCCDA claim on narrower grounds.

I.

"Because [Philibotte] challenge[s] the district court's dismissal of [her] claims under Fed. R. Civ. P. 12(b)(6), we [briefly] recite the facts and reasonable inferences raised by the facts in [her] favor."  Salois v. Dime Sav. Bank of N.Y., FSB, 128 F.3d 20, 22 (1st Cir. 1997).[2]

---

[1] The district court reached the merits, but also held, in the alternative, that Philibotte's federal claim was barred by the statute of limitations.  Unlike the district court, we do not reach the merits of this claim.

[2] These facts are taken from the redacted amended complaint, the sealed portions being irrelevant to our resolution of this case.

Philibotte also appealed the district court's order from December 22, 2014, denying her motion to unseal the complaint and the amended complaint.

We review the district court's order for abuse of discretion. See Siedle v. Putnam Invs., Inc., 147 F.3d 7, 10 (1st Cir. 1998)

- 4 -

In January 2011, Philibotte's hot water heater at her home in Chicopee, Massachusetts, stopped working. She contacted Columbia Gas, allegedly a Nisource entity,[3] whose agents evaluated her water heater and told her that the "best and cheapest way to proceed" would be to "lease" a new Ruud water heater for $204, made in twelve monthly payments of $17. They gave her such a lease, which she signed. Philibotte alleges that the agents never explained the terms of the lease, provided her with any TILA disclosures, or informed her that the full retail market value of the heater (including installation) was only $400 to $500.

---

("The trial court enjoys considerable leeway in making decisions of this sort."). The crux of Philibotte's argument is that Nisource did not present, and the district court did not consider, "any independent basis other tha[n] the state court impoundment." "[A]lthough the scales tilt decidedly toward transparency," we cannot say the district court abused its discretion to keep under seal portions of the complaint that were filed in direct contravention of a state court order. See Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 70 (1st Cir. 2011). The "presumptive right of access attaches to those materials 'which properly come before the court,'" and we will not permit litigants to abuse this right to circumvent state court procedures aimed at curbing discovery abuse. See In re Providence Journal Co., 293 F.3d 1, 9 (1st Cir. 2002) (emphasis added) (quoting F.T.C. v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 412-13 (1st Cir. 1987)); cf. Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.").

[3] We need not resolve a dispute over the relationship between these entities in light of our holding. See Philibotte v. Nisource Corp. Servs. Co., No. 14-11300, 2014 WL 6968441, at *1 n.1 (D. Mass. Dec. 9, 2014).

The lease, which was attached to the complaint, carried a minimum term of twelve months, after which either party could terminate the lease without penalty on 30 days written notice. It also included a buyout option that could be exercised at any time. The buyout price varied depending on how many monthly payments had been made to date, decreasing over time to a minimum of $75. The lease did not require Philibotte to return the heater upon termination, unless demanded, and the parties dispute whether the transaction contemplates such a return.

Neither Philibotte nor Columbia Gas terminated the lease upon completion of the minimum term in January 2012. Philibotte continued to lease the heater for two more years, until February 2014, when she contacted Columbia Gas to exercise her option to purchase. She alleges that Columbia Gas's response to her request "ma[de] all sorts of misrepresentations and waivers" to disguise the fact that this was the culmination of a disguised credit sale. Despite these, she signed the required "appliance sales agreement," under which she paid an amount roughly equivalent to the lease's buyout price.

Philibotte filed this putative class action against Nisource in March 2014. She alleged three disclosure violations under both federal and state law: (1) a federal claim under TILA, 15 U.S.C. § 1601 et seq.; (2) a state law claim under the RISSA, Mass. Gen. Laws ch. 255D, § 1 et seq.; and (3) a state law claim

under the CCCDA, Mass. Gen. Laws ch. 140D, § 1 et seq. She also brought an unjust enrichment claim and a Massachusetts 93A claim based on the alleged mischaracterization of the transaction as a "lease." The complaint sought, inter alia, class certification, compensatory and statutory damages, and equitable relief including rescission.

The district court found that the transaction did not qualify for protection under the standard for identifying consumer leases subject to RISSA protection that was articulated by the SJC in Silva v. Rent-a-Center, Inc., 912 N.E.2d 945 (Mass. 2009). See Philibotte v. Nisource Corp. Servs. Co., No. 14-11300, 2014 WL 6968441, at *3-6 (D. Mass. Dec. 9, 2014). The district court also found that the same standard applied, and so precluded, Philibotte's federal TILA and Massachusetts CCCDA claims. Id. Accordingly, the court granted Nisource's motion to dismiss. Id. at *6.

## II.

The district court had jurisdiction over Philibotte's federal TILA claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims.[4] See Belini, 412 F.3d at 19-20. We have jurisdiction under 28 U.S.C. § 1291.

---

[4] It is not clear whether there is also diversity jurisdiction over the state law claims in addition to supplemental jurisdiction,

Our review is de novo. Palmer v. Champion Mortg., 465 F.3d 24, 27 (1st Cir. 2006). We are not bound to the reasoning of the district court, but "may affirm on any basis apparent in the record." Debnam v. FedEx Home Delivery, 766 F.3d 93, 96 (1st Cir. 2014) (quoting Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 n.11 (1st Cir. 2013)). In so doing, we must draw all reasonable factual inferences in Philibotte's favor, but "refrain from crediting her 'bald assertions, unsupportable conclusions, and opprobrious epithets.'" Palmer, 465 F.3d at 28 (quoting Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)). We begin with the federal claim.

Philibotte's federal TILA claim is time-barred unless brought within the one-year statute of limitations. 15 U.S.C. § 1640(e); McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 211 (1st Cir. 2012) (noting that the federal statute of limitations applies to the federal claim, even where a state exemption applies); see also Belini, 412 F.3d at 26. This period runs "from the date of the occurrence of the violation," 15 U.S.C. § 1640(e),

---

and the district court did not address the issue. Even assuming there is not diversity jurisdiction, the facts fail to give rise to a claim under state law without implicating substantive questions of state law. Accordingly, we cannot say the district court would have abused its discretion had it exercised supplemental jurisdiction for the convenience of the parties after dismissal of the federal claim. Cf. Desjardins v. Willard, 777 F.3d 43, 45 (1st Cir. 2015).

which for disclosure violations in credit sales is the date the transaction was consummated.  See, e.g., King v. California, 784 F.2d 910, 915 (9th Cir. 1986); Evans v. Rudy-Luther Toyota, Inc., 39 F. Supp. 2d 1177, 1184 (D. Minn. 1999) (citing Dryden v. Lou Budke's Arrow Fin. Co., 630 F.2d 641, 646 (8th Cir. 1980)).  Absent equitable tolling, the statute of limitations ran in January 2012, one year after Philibotte entered into the lease agreement.  Suit was not brought until March 2014.

Philibotte argues that equitable tolling applies because Nisource misrepresented the agreement to be a "lease" and engaged in active deception to hide the true nature of the lease as a credit sale.[5]  But "[i]n this case, the inquiry is over before it begins."  Salois, 128 F.3d at 26.

To warrant equitable tolling under the doctrine of fraudulent concealment, a plaintiff must "exercise reasonable diligence in discovering that [she] ha[s] been the victim[] of fraud."  Id. ("[A]lthough . . . reasonable diligence is factually based, it may be determined as a matter of law where the underlying

---

[5] Although the district court ruled, in the alternative, that the statute of limitations barred Philibotte's federal claim, the district court did not expressly address equitable tolling in its decision.  Cf. Jardín de las Catalinas Ltd. P'ship v. Joyner, 766 F.3d 127, 135 (1st Cir. 2014) (noting that rejection of equitable tolling is reviewed for abuse of discretion against the "background precepts that [it] is available only in exceptional circumstances" (quoting Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004)) (internal quotation marks omitted)).

facts are admitted or established without dispute."). Even accepting all facts as alleged, Philibotte failed to exercise this diligence as a matter of law, and so does not warrant relief. See id. The lease here "contained all of the information necessary to determine" that it might be a disguised credit sale. Id. Accordingly, "sufficient facts -- indeed, all the facts -- were available to place [Philibotte] on inquiry notice of fraudulent conduct" from the time she entered into the agreement. Id.; cf. Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1045-46 (9th Cir. 2011). And there were no other impediments to Philibotte's discovery of the alleged fraud: the lease itself is short and simple to understand, and she does not allege that Nisource took any further action to hide the true nature of the transaction.[6] Cf. Palmer, 465 F.3d at 28 ("This methodology [of refraining from crediting bald assertions on motions to dismiss] is particularly appropriate in the TILA context where we . . . focus[] . . . on the text of the disclosures themselves rather than on plaintiffs' descriptions of their subjective

---

[6] Philibotte alleges that Nisource engaged in active deception when she exercised her option to purchase, but this was not until February 2014, long after the period had already run. Cf. Hubbard v. Fidelity Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996) (declining to toll the statute of limitations for TILA claims that had run before defendant's subsequent attempts to conceal violations); accord Evans, 39 F. Supp. 2d at 1185 ("[A]t the time of those purported acts, there was no limitations period to toll.").

understandings."). Even so, Philibotte did not sue for three years.

Under our "narrow view of equitable exceptions" to the statute of limitations, we decline to find that tolling is needed on the facts of this case "to prevent unjust results or to maintain the integrity of [the] statute." Salois, 128 F.3d at 25 (quoting King, 784 F.2d at 915). The limitations period ran in January 2012. Because Philibotte did not file until March 2014, her federal TILA claim is barred, and so was properly dismissed. See 15 U.S.C. § 1640(e); cf. McKenna, 693 F.3d at 211.

IV.

The federal claim having been properly dismissed, there remain only the state law claims for alleged violations of RISSA, for alleged violations of Massachusetts CCCDA, for unjust enrichment, and for violations of Massachusetts 93A, over which we exercise supplemental jurisdiction.[7]

---

[7] We emphasize that where a court "dismisses the foundational federal claims, it must reassess its jurisdiction." Desjardins, 777 F.3d at 45 (quoting Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998)) (internal quotation marks omitted). Although the "balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where[, as here,] the foundational federal claims have been dismissed at an early stage in the litigation," the parties do not challenge the district court's decision to exercise this discretionary jurisdiction (assuming diversity jurisdiction was unavailable), and this case can be narrowly decided to avoid concerns of comity. Camelio, 137 F.3d at 672 ("Comity is a particularly important concern in these cases."); see also Desjardins, 777 F.3d at 45 (noting that other factors to be balanced include fairness,

- 11 -

In "exercising supplemental jurisdiction over a state law claim," we apply "state substantive law" as that law has been applied by the state's highest court. Barton v. Clancy, 632 F.3d 9, 17 (1st Cir. 2011). "If the highest court has not spoken directly on the question at issue, we predict 'how that court likely would decide the issue.'" Id. (quoting González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318-19 (1st Cir. 2009)). In so doing, we are mindful that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties," Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)), and so affirm on the narrowest grounds made apparent by the record, see Debnam, 766 F.3d at 96.

A.   Philibotte's Claim under RISSA

The district court correctly held that Philibotte's RISSA claim is precluded under Massachusetts SJC precedent in Silva v. Rent-A-Center, Inc., 912 N.E.2d 945 (Mass. 2009). This is because RISSA's disclosure requirements only apply to consumer leases meeting "specific [statutory] requirements" that, as Silva makes clear, Philibotte's lease cannot meet. Silva, 912 N.E.2d at

judicial economy, and convenience). Accordingly, we continue to the merits, and affirm on narrower grounds than the district court.

- 12 -

949-53 (discussing the standard for identifying "retail installment sale agreement[s]").

In particular, a consumer lease must satisfy two statutory requirements to trigger RISSA's disclosure protections: (1) the lessee "contracts to pay as compensation for use a sum substantially equivalent to or in excess of the value of goods involved"; and (2) "it is agreed that the . . . lessee will become, or for no other or for a nominal consideration has the option to become the owner of the goods upon full compliance with his obligations under the contract." RISSA, Mass. Gen. Laws ch. 255D, § 1;[8] see also Silva, 912 N.E.2d at 950 n.11 (emphasizing that,

---

[8] The relevant definition under RISSA states in full:

"Retail installment sale agreement", [is] an agreement, other than a revolving credit agreement or agreement reflecting a sale made pursuant thereto, signed by the buyer in this commonwealth, involving a finance charge and providing for the sale of goods or the rendering of services or both, or for the issuance of merchandise certificates, for a specified amount which the buyer undertakes to pay in more than one payment subsequent to the making of the agreement, or not involving a finance charge and providing for the sale of goods or the rendering of services or both, or for the issuance of merchandise certificates, for a specific amount which the buyer undertakes to pay in five or more installments subsequent to the making of the agreement. A retail installment sales agreement shall not include an agreement signed by a nonresident buyer in the commonwealth if such buyer has agreed that the law of his state shall apply. "Retail installment sale agreement" shall also include any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the value of goods involved

- 13 -

under RISSA, <u>both</u> definitional requirements must be met).  In applying at least the first of these requirements, the SJC directs us to "look . . . to the nature of the contract at the time it was formed."  <u>Silva</u>, 912 N.E.2d at 951 (emphasizing that we are to evaluate "parties' contractual rights and obligations at that point").[9]

Under this standard, leases will not satisfy the first requirement if they do not "<u>require</u> payments substantially equivalent to or in excess of the value of the goods" under their original term.  <u>Id.</u> at 951-52 (citation omitted).  Because of this emphasis on the lease's original term, this RISSA requirement is not satisfied by a consumer who renews "multiple times" and so eventually makes payments "exceed[ing] the value of the item."  <u>Id.</u>

---

and it is agreed that the bailee or lessee will become, or for no other or for a nominal consideration has the option to become the owner of the goods upon full compliance with his obligations under the contract. A retail installment sale agreement shall not include an agreement which provides (a) for the payment of the total sale price in no more than three monthly installments and (b) a finance charge not in excess of one dollar and (c) no collateral security for the seller.

Mass. Gen. Laws ch. 255D, § 1.

[9] Some doubt has been cast on how this standard applies to the second statutory requirement. <u>See, e.g.</u>, <u>Saia</u> v. <u>Bay State Gas Co.</u>, 965 N.E.2d 224, 2012 WL 1145913, at *2 (Mass. App. Ct. Apr. 6, 2012) (unpublished disposition).  Because we can resolve this case on the first prong, we do not reach this issue.

Philibotte's lease cannot meet this requirement because the original term of her "agreement [does] not <u>require</u> [her] . . . to pay a 'sum substantially equivalent to or in excess of the value of the goods involved.'" <u>Id.</u> at 950 (quoting Mass. Gen. Laws ch. 255D, § 1). That agreement only obligated her to pay $204, which she concedes is less than half the alleged value of the water heater involved. This "absence of any obligation on the part of [Philibotte] to pay a sum substantially equivalent to the value of the leased [water heater] is decisive" under the standard applied by the SJC. <u>Id.</u> at 951.

B.   Massachusetts CCCDA Claim

Like Philibotte's claim under RISSA, Philibotte's claim under Massachusetts CCCDA will only succeed if the lease meets the statutory definition of a "credit sale." Mass. Gen. Laws ch. 140D, § 1. Unlike for RISSA, the SJC has yet to speak directly on the appropriate construction, and so we must predict how the SJC would likely rule in this case. <u>Barton</u>, 632 F.3d at 17.

The statutory definition of "credit sale" includes leases "if the . . . lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved." Mass. Gen. Laws ch. 140D, § 1.[10]   Philibotte's lease clearly does not meet this

---

[10] The relevant definition reads in full:

standard.  She only "contract[ed] to pay" $204, a sum concededly less than half the "value of the property . . . involved," and so far, far less than the value of the property and services -- which included installation.  See id.  For this reason, we need not reach Philibotte's argument that the original term effectively constituted a "down payment," because even if the SJC declined to strictly apply the statutory definition, Philibotte's lease does not meet it.  Cf. Saia v. Bay State Gas Co., 965 N.E.2d 224, 2012 WL 1145913, at *1-4 (Mass. App. Ct. Apr. 6, 2012) (unpublished disposition) (finding a water-heater lease may be a disguised credit sale where original three-year term required payment far exceeding value of heater).

In so doing, we do not follow the district court's reasoning that, because CCCDA and RISSA share similar statutory definitions for the type of consumer transactions covered,[11] the

---

> "Credit sale", [is] any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

Mass. Gen. Laws ch. 140D, § 1.

[11] The only difference between the CCCDA definition and the RISSA definition is that CCCDA substitutes the "aggregate value of the property and services involved" for "the value of goods involved," and "owner of the property" for "owner of the goods."

- 16 -

standard articulated in Silva also applies to Philibotte's claim under the CCCDA.  See Philibotte, 2014 WL 6968441, at *4 & n.4. We need not, and so should not, reach that issue because Philibotte's claim plainly fails to meet the first prong of the CCCDA definition.  Accordingly, we need not, and so should not, decide whether Silva controls the appropriate construction of the CCCDA.  Cf. Camelio, 137 F.3d at 672 (quoting United Mine Workers, 383 U.S. at 726) (counseling avoidance of "[n]eedless decisions of state law").[12]

C.    Unjust Enrichment & Massachusetts 93A

Finally, we affirm dismissal of Philibotte's remaining claims for unjust enrichment and violations of Massachusetts 93A.

A claim for unjust enrichment generally cannot stand where there is an existing, express contract, unless the contract

---

See CCCDA, Mass. Gen. Laws ch. 140D, § 1; RISSA, Mass. Gen. Laws ch. 255D, § 1.

[12] This is particularly true where, as here, existing state precedent governing RISSA may complicate the interaction between the Massachusetts exemption for the CCCDA and the scope of federal TILA coverage for this type of transaction. Cf. McKenna, 693 F.3d at 211 (noting the existence of "unsettled questions as to what federal rights are displaced and what others remain where, as is the case with Massachusetts, the Federal Reserve has exempted a state from various TILA's provisions on the grounds that state law establishes 'substantially similar' requirements"); McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 422 (1st Cir. 2007) (noting that CCCDA is to be construed similarly to TILA); Silva, 912 N.E.2d at 951 (interpreting analogous definition under RISSA); Saia, 2012 WL 1145913, at *2 (determining whether lease of hot water heater was a "credit sale" under CCCDA without straightforwardly applying standard articulated in Silva).

- 17 -

is not valid.  See Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 162 (1st Cir. 2005) (collecting cases); see also Zarum v. Brass Mill Materials Corp., 134 N.E.2d 141, 143 (Mass. 1956). Philibotte contends that the contract's existence does not bar her claim because Nisource procured the contract by fraud. Specifically, she argues that Nisource mischaracterized the transaction as a lease when the transaction was, in fact, a disguised credit sale or retail installment sale to which disclosure requirements apply.  But we have already rejected her contention that the lease was, in fact, a credit sale or retail installment sale agreement within the meaning of the relevant statutes.  Because Philibotte does not allege any other fraud that might render the lease invalid, the existing lease agreement bars her claim for unjust enrichment.[13]  See Okmyansky, 415 F.3d at 162.

Philibotte's 93A claim fails for a similar reason: the only basis she offers for her 93A claim is that "[a] violation of CCCDA or the RISSA is as a matter of law a violation of [93A]." See Mass. Gen. Laws ch. 140D, § 34.  We have already rejected her contention that the lease violated either the CCCDA or RISSA, and so affirm dismissal of her 93A claim.

---

[13] Philibotte does not develop -- and so has waived -- any argument that the lease was a disguised conditional sale even if it does not meet the statutory definitions for (disguised) credit or retail installment sales under CCCDA and RISSA.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

<u>Affirmed</u>.  Costs are assessed against Philibotte.