NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1010                                          Appeals Court


DIANE SAIA[1]  vs.  BAY STATE GAS COMPANY.


No. 14-P-1010.

Suffolk.     April 15, 2015. - December 15, 2015.

Present:  Cohen, Wolohojian, & Maldonado, JJ.


Massachusetts Retail Instalment Sales Act.  Massachusetts
      Consumer Credit Cost Disclosure Act.  Consumer Protection
      Act, Class action.  Practice, Civil, Summary judgment.
      Contract, Lease of equipment.



      Civil action commenced in the Superior Court Department on
November 2, 2010.

      After review by this court, 81 Mass. App. Ct. 1127 (2012),
the case was heard by Janet L. Sanders, J., on motions for
summary judgment.


      Valeriano Diviacchi for the plaintiff.
      J. Christopher Allen, Jr. (Troy Lieberman with him) for the
defendant.


      MALDONADO, J.  The plaintiff appeals from a judgment of

dismissal contending, as she did below, that a transaction

      _____

      [1] Individually and as a representative of other persons
similarly situated.

involving the lease of a water heater was actually a credit sale in disguise, and, consequently, that the defendant's failure to make certain required disclosures amounted to common-law misrepresentation and a violation of G. L. c. 93A. Guided by Silva v. Rent-A-Center, Inc., 454 Mass. 667 (2009) (Silva), a Superior Court judge concluded that the transaction at issue did not meet the definition of either a "credit sale" under the Consumer Credit Cost Disclosure Act (CCCDA), G. L. c. 140D, § 1, or a "retail installment sale agreement" under the Retail Instalment Sales and Services Act (RISSA), G. L. c. 255D, § 1, and, accordingly, granted summary judgment in favor of the defendant. We agree and affirm.

Background. In July, 2010, the plaintiff, Diane Saia, entered into an agreement with the defendant, Bay State Gas Company (Bay State), for the installation of a new water heater at her home in Longmeadow. The plaintiff signed a document entitled "Appliance Lease Agreement," which obligated her to pay $28.16 per month for three years for use of a water heater. The total lease payments for the three-year "minimum term" amounted to $1,013.76. That amount combined with a $220 upfront installation fee brought the plaintiff's total obligation under the agreement to $1,233.76. At the end of the minimum term, both the plaintiff and the defendant could cancel the lease at any time upon a thirty-day written notice. Absent the written

cancellation notice, the lease could continue indefinitely. The plaintiff was also given the option to purchase the water heater at any time during the lease (including within the minimum term). Under this buyout option, the purchase price was the greater of two amounts: (1) the sum of one-half of the paid lease payments subtracted from a "total installed price" of $1,510.87,[2] or (2) $75. After making thirteen lease payments totaling $366.08, the plaintiff chose to exercise the purchase option and paid an additional $1,381.66 pursuant to the contract buyout formula.[3] Adding together the lease payments, the upfront installation fee, the buyout price, and the sales tax, the plaintiff spent a total of $1,967.74 to take ownership of the water heater.

On November 10, 2010, the plaintiff filed a four-count amended class action complaint asserting misrepresentation (Count I), violations of G. L. c. 93A (Count II), unjust enrichment (Count III), and seeking rescission on the basis that

---

[2] While not defined in the written agreement, the total installed price reflected the wholesale cost of the heater plus a markup, the labor costs for installation, and the defendant's operating and maintenance costs. The price to purchase the water heater from the defendant upfront instead of leasing it would have been similar to the "total installed price."

[3] Applying the buyout formula, the total rental payments of $366.08 were divided by two (one half of the total lease payments paid to date). The resulting figure of $183.04 was then subtracted from the total installed price of $1,510.87 for a resulting buyout purchase price of $1,327.83, to which $53.83 in sales tax was added for a sum total of $1,381.66.

the defendant had violated G. L. c. 93, § 48 (Count IV).  A Superior Court judge dismissed the entire complaint for failure to state a claim pursuant to Mass.R.Civ.P 12(b)(6), 365 Mass. 754 (1974).  This court, in an unpublished decision pursuant to Appeals Court Rule 1:28, affirmed the dismissal of counts III and IV and reversed the dismissal of the remaining claims which, resting on the CCCDA and the defendant's failure to disclose interest charges, alleged common-law misrepresentation and a violation of G. L. c. 93A.  Saia v. Bay State Gas Co., 81 Mass. App. Ct. 1127 (2012) (Saia I).[4]  Following remand on the reinstated counts, the judge entered summary judgment in favor of the defendant on the plaintiff's amended complaint, and the plaintiff timely filed her appeal.

Summary judgment.  In reviewing a grant of summary judgment, we consider the evidence in the light most favorable to the nonmoving party and determine whether "all material facts have been established and the moving party is entitled to a judgment as a matter of law."  Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).  "We may consider any ground supporting the judgment."  Ibid.

---

[4] In the plaintiff's amended complaint and in the appeal that followed, the plaintiff rested her claim on an alleged violation of the CCCDA.  There was no claim under RISSA. Accordingly, in Saia I, we did not consider, as we do now, the effect of RISSA and the Supreme Judicial Court's decision in Silva (interpreting the application of only the RISSA statute to a lease agreement) to her claim.

The plaintiff contends the transaction at issue was actually a disguised credit sale or a retail instalment sale agreement and, as a result, that the defendant failed to make certain disclosures required by the CCCDA and RISSA.[5]  The plaintiff asserts this failure amounts to common-law misrepresentation and a violation of G. L. c. 93A.  The first step in our inquiry, therefore, is to determine whether the transaction meets the definition of a credit sale under the CCCDA or a retail instalment sale agreement under the RISSA.  The CCCDA defines a credit sale as:

> "any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract."

G. L. c. 140D, § 1, inserted by St. 1981, c. 733, § 2.  The RISSA similarly defines a retail instalment sale agreement as:

> "any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the value

---

[5] Following remand, the plaintiff raised RISSA in a motion seeking partial summary judgment.  In granting summary judgment for the defendant, the motion judge addressed the plaintiff's claims under RISSA both because the plaintiff raised RISSA in her motion, and because RISSA spells out the same disclosure requirements as those specified in the CCCDA.  See G. L. c. 255D, § 31 (indicating that transactions subject to RISSA are also subject to CCCDA).  For the same reasons, we also consider the application of RISSA.

> of goods involved and it is agreed that the bailee or lessee will become, or for no other or for a nominal consideration has the option to become the owner of the goods upon full compliance with his obligations under the contract."

G. L. c. 255D, § 1, as appearing in St. 1981, c. 733, § 14. The operational language of the two statutes is virtually indistinguishable, differing only in the manner in which each describes the object of the agreement. The object of the agreement in a credit sale is defined as "property and services," while it is defined simply as "goods" for a retail instalment sales agreement. We nevertheless address each statute separately.

In Silva, the Supreme Judicial Court considered a certified question from a judge of the United States District Court for the District of Massachusetts concerning whether a "consumer lease agreement" for a laptop computer was actually a retail instalment sale agreement in disguise and, therefore, subject to RISSA regulation. Silva, supra at 668. Emphasizing that both requirements of the statute had to be met, the court stated that in order for a transaction to be a retail instalment sale agreement, the contract must both "obligate the consumer to pay an amount substantially equivalent to, or in excess of [the value of] the goods involved and the consumer must have the option to become the owner for no other or nominal consideration

on full compliance with his or her contractual obligations."
Id. at 673 n.11.  In evaluating a contract under this two-prong
test, the court directs that we look "to the nature of the
contract at the time it was formed, focusing on the parties'
contractual rights and obligations at that point.  See 4 J.J.
White & R.S. Summers, Uniform Commercial Code § 30-3, at 19 (5th
ed. 2002)."  Id. at 674.  The court also observed that
"application of a regulatory framework does not depend on the
economics of hindsight."  Ibid.  Applying this analytical
framework to the lease agreement into which the plaintiff
entered here, we conclude the agreement with Bay State does not
qualify as a retail instalment agreement under RISSA.

While it appears that there may be at least a colorable
claim that the lease agreement at issue here meets the first
prong of the test identified in Silva, supra at 673 n.11,[6] we

---

[6] Under her lease agreement, the plaintiff was obligated to
pay a monthly rental fee, including tax, of $28.16 for a minimum
term.  At the end of the minimum three-year lease term, the
plaintiff would have been obligated to have paid $1,013.76 in
rental fees, plus an additional upfront installation fee of $220
for a total contract price of $1,233.76, inclusive of sales tax.
This figure amounts to about seventy-five per cent of the stated
$1510 installed price, which is significantly higher than the
minimal one-week $39 payment required in Silva, supra.  Plus,
the plaintiff asserts that $1510 is an inflated price for a
water heater.  According to the plaintiff, the actual price of
an installed water heater is $1200, and the defendant does not
dispute that there is arguably a factual question regarding the
installed price, which, according to the plaintiff, results in a
sum "substantially equivalent to or in excess of the value" of
the water heater.  See Silva, supra at 674.  Without conceding

nevertheless agree with Bay State that the plaintiff's claim fails on the second prong. In order for the plaintiff to take ownership of the water heater at the end of her three-year lease term, she would have had to make an additional payment of $1,003.99 -- the $1510 installed price minus $506.88 (one-half of $1,013[7]) plus tax. That payment, which is nearly two thirds of the $1,510.87 installed price, is, in the words of the statute, neither "no other" nor "nominal consideration" and, accordingly, precludes a conclusion that the lease agreement at issue here constitutes a retail instalment sale agreement under RISSA.[8] See Silva, supra at 674.

---

that the first prong is satisfied by the three-year lease term at issue here, the defendant contends that even if that prong was satisfied, the plaintiff's claim fails on the second prong. Ibid.

[7] Three years of monthly rental payments at $28.16.

[8] Counterintuitively, the transaction may have qualified as an instalment sale had the payoff amount been less. In other words, by charging more money, i.e., structuring the deal such that only a small portion of the lease payments was credited toward the purchase price, the transaction was potentially transformed from a sale to a lease, and fell outside of RISSA's consumer protection reach, even though considering the upfront payment, lease payments, and payoff payment, the consumer would have paid approximately forty-six per cent above the $1,510 installed price to take ownership of the water heater. Saia contends that because the agreement involves a long-term lease of a permanent household fixture, which by its very nature results most often in purchase, extension, or renewal of the lease at the end of the three years, RISSA applies. Stated that way, however, while the agreement may appear to disfavor consumers in that regard, she points to no wording in the statute or any case law that draws the distinctions she urges.

Bay State now urges that we apply the reasoning of Silva to the plaintiff's claim under the CCCDA. As noted, Silva addressed the definition of a retail instalment sale agreement under RISSA. We agree that the identical language used by the two statutes in defining their respective sales transactions invites application of the same analysis. That approach was recently acknowledged by the United States Court of Appeals for the First Circuit in a similar case involving a water heater lease. See Philibotte v. Nisource Corporate Servs. Co., 793 F.3d 159, 167 (1st Cir. 2015). The court noted, however, that the Supreme Judicial Court had not yet spoken to the application of Silva in the CCCDA context. Id. at 166. Instead, the court reasoned that the plaintiff's lease in that case failed to meet the first prong of the CCCDA definition for a credit sale and. thus, the court did not address whether Silva required the same result. See Philibotte v. Nisource Corporate Servs. Co., supra at 167 ("We need not, and so should not, reach that issue because Philibotte's claim plainly fails to meet the first prong of the CCCDA definition").

In light of Philibotte v. Nisource Corporate Servs. Co., supra, and the arguments raised in this appeal, we are now persuaded that Silva's interpretation of the definition of a retail installment sale under RISSA should apply as well to the CCCDA's definition of a credit sale. First, the two statutes

are expressly connected pursuant to § 31 of RISSA, as appearing in St. 1981, c. 733, § 23, which provides that "[a] transaction subject to the provisions of this chapter shall also be subject to the provisions of chapter one hundred and forty D . . . ."[9] We interpret this to mean that the statutes should be given the same consideration, so as to achieve their common goal.  See generally, May v. SunTrust Mort., Inc., 467 Mass. 756, 759 (2014), quoting from Fidler v. Central Coop. Bank, 226 B.R. 734, 736 (Bankr. D. Mass. 1998) (CCCDA designed "to assure a meaningful disclosure of credit terms" and protect against inaccurate and unfair credit billing); Wilkins, The New Massachusetts Retail Installment Sales Act, 51 Mass. L.Q. 205, 206-208 (1966) (RISSA to provide substantial protection to consumers, including the disclosure of finance charges on obligations paid in more than one instalment).

Furthermore, the two statutes share the same overriding purpose and, with respect to the relevant definitions, nearly identical language.  Therefore, they should be treated in a consistent manner.[10]  That the two statutes are aimed at somewhat

---

[9] Although RISSA was enacted in 1966, § 31 was amended in 1981 to make reference to c. 140D, when the latter went into effect.  See St. 1981, c. 733, § 23.

[10] A similar approach has been adopted with respect to identical language in the disclosure requirements of the CCCDA and the Federal Truth in Lending Act (TILA), 15 U.S.C. § 1635.  See, e.g., May v. SunTrust Mort., Inc., 467 Mass. 756, 759

different aspects of consumer credit transactions reflects, we believe, the historical development of consumer credit legislation generally, rather than a legislative intent that their virtually identical provisions be treated differently. See Curran, Legislative Controls as a Response to Consumer-Credit Problems, 8 B.C. Indus. & Com. L. Rev. 409, 419 (1967) (as a result of piecemeal legislation responding to changes in the consumer-credit market, "[w]hen regulation of the same subject matter occurs in acts that apply to different classes of arrangements, similarity of treatment may be observed").

For these reasons, in our view, application of Silva's RISSA analysis to the identical operational language in CCCDA's definition of a credit sale compels the same result.  As noted in our discussion under RISSA, we understand full compliance with contractual obligations, under the second prong of the CCCDA's definition, to mean completion of the three-year lease term, irrespective of the option to renew.  Since the plaintiff could not become the owner of the water heater for nominal consideration at the end of the three-year term, the lease agreement did not constitute a credit sale under the CCCDA, and Bay State's alleged failure to provide the plaintiff with the

---

(2014) (interpreting CCCDA consistently with TILA, upon which the State statute was modeled); Rodrigues v. Members Mort. Co., 323 F. Supp. 2d 202, 210 (D. Mass. 2004) (essentially identical disclosure requirements of the CCCDA and TILA "do not require separate analysis").

disclosures required under the CCCDA did not constitute a violation of c. 93A.

Because the parties' transaction involving the water heater was neither a credit sale nor a retail instalment sale agreement, Bay State was not obligated to make disclosures pursuant to the CCCDA or RISSA.[11]  The lack of statutory disclosure, therefore, cannot serve as the basis for common-law misrepresentation or c. 93A claims.  We affirm the entry of summary judgment on that basis.

Other matters.  a.  Unreviewable claims.  The plaintiff also appeals from what she claims is the judge's denial of her motion to further amend the complaint.  On the record before us, however, there is no indication that the judge acted on this motion.  Without a ruling on the motion, there is no disposition for us to review.  Marcil v. John Deere Indus. Equip. Co., 9 Mass. App. Ct. 625, 632 (1980).[12]

---

[11] The Philibotte case involved the same plaintiff's counsel and defense counsel, as well as the same defendant, as in this case.  (Nisource was described as doing business as Bay State Gas Co.  Philibotte v. Nisource Corporate Servs. Co., supra at 160.)  It also involved the same general allegations that a transaction involving a water heater was actually a disguised credit sale and that the defendant failed to make the required disclosures.  Id. at 161.

[12] The plaintiff also seeks to appeal from the judge's denial of her motion for a preliminary injunction.  In view of our disposition of the case on the merits, we need not address this claim.

b.  Motion to vacate.  The plaintiff appeals from the
judge's denial of a motion to vacate the dismissal of her unjust
enrichment claim, which dismissal we affirmed in Saia I.  The
plaintiff cites no authority, and we know of none, that
authorizes the Superior Court to effectively overrule our
decision.  The plaintiff mistakenly cites the "law of the case"
doctrine, see Peterson v. Hopson, 306 Mass. 597, 601-602 (1940),
which has no application in the circumstances presented here.

c.  Dismissal of recission claim.  Finally, we also reject
the plaintiff's claim that the judge misinterpreted our decision
in Saia I by declining to consider her G. L. c. 93, § 48,
claims.  In Saia I we expressly affirmed the dismissal of the
plaintiff's claim for rescission of the agreement under G. L.
c. 93, § 48, and the judge did not err in so concluding.

Judgment affirmed.